1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                          DISTRICT OF NEVADA

8                                    * * *

9   JENNIFER T. FLORIO,                     Case No. 2:11-cv-01991-MMD-RJJ

10                        Plaintiff,                        ORDER

11          v.

12  VISTA PACIFIC HOLDINGS, *et al.*,

13                        Defendants.

14

15          Before the Court are ten motions: Plaintiff Jennifer T. Florio's Motion for

16  Temporary Restraining Order ("TRO") (dkt. no. 3, filed Dec. 13, 2011); Florio's Motion for

17  Preliminary Injunction (dkt. no. 4, filed Dec. 13); Florio's Motion to Set Aside (dkt. no. 13,

18  filed Dec. 29); Ocwen Loan Servicing LLC's Motion to Dismiss (dkt. no., filed Jan. 18,

19  2012); Florio's second Ex Parte Motion for Temporary Restraining Order (dkt. no. 24,

20  filed Jan. 23); BSI Financial Services, Inc., Seaside Trustee, Inc., HLS ABC-100, LLC,

21  and Vista Pacific Holdings' Motion to Dismiss (dkt. no. 27, filed Feb. 3); Florio's Motion

22  for Summary Judgment (dkt. no. 34, filed Feb. 21); Florio's Motion to Extend Time (dkt.

23  no. 35, filed Feb. 21); MortgageIT, Inc's Motion to Dismiss (dkt. no. 39, filed Mar. 2);

24  Green Tree Servicing LLC's Motion to Dismiss (dkt. no. 43, filed Mar. 6); Florio's Motion

25  for Mediation/Status Conference (dkt. no. 52, filed Mar. 21); and Arch Bay Holdings LLC

26  and Quantum Servicing Corporations' Motion for Judgment on the Pleadings (dkt. no.

27  69, filed June 22).  The Court has also considered the relevant oppositions and replies to

28  these motions.

1    I.    **BACKGROUND**

2          On May 26, 2006, Florio entered into a $226,400 Adjustable Rate Loan with

3    MortgageIT, Inc. (the "Note"), the predecessor in interest to HLS ABC-100.  The loan

4    was used to purchase, and secured by, the real property located at 610 Azure Avenue in

5    North Las Vegas (the "Property") pursuant to a Deed of Trust, recorded in the Official

6    Records of Clark County on June 9, 2006, as document number 20060609-0002619 (the

7    "DOT").  Florio defaulted on the Note in October 2009.

8          Florio filed bankruptcy in December 2009.  The Bankruptcy Court discharged the

9    bankruptcy in October 2010.  HLS ABC-100 recorded a Notice of Default ("NOD") on or

10   about April 26, 2011. After various delays and after Florio filed this suit against

11   seemingly any party ever involved with her mortgage on December 13, 2011, the

12   property was sold at a non-judicial foreclosure sale on December 21, 2011.  (Dkt. no. 27,

13   Request for Judicial Notice, Ex. 1.)  HLS ABC-100 is the current owner of the Property.

14         Now before the Court are various motions for temporary restraining orders

15   (TROs), motions to dismiss, a motion for summary judgment, a motion to set aside, a

16   motion to extend time and a motion for judgment on the pleadings.  For the reasons

17   addressed below, the Court denies the TRO motions, denies the motion to set aside,

18   denies the motion for summary judgment, grants the motion to extend time and the

19   motion for judgment on the pleadings, and grants the various motions to dismiss in their

20   entirety, though without prejudice.

21   II.   **DISCUSSION**

22         A.    **Florio's First Motion for TRO and Preliminary Injunction**

23         The Court denies Florio's first motion for a TRO and a preliminary injunction as

24   moot.  The foreclosure sale which Florio requested the Court to enjoin has already taken

25   place as discussed in Florio's Motion to Set Aside.  Further, even were the motions not

26   moot, the Court finds that Florio has not met the requirements for a TRO or preliminary

27   injunction set forth by the Supreme Court.  *Winter v. Natural Res. Def. Council, Inc.*, 555

28   U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is

1  likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

2  of preliminary relief, that the balance of equities tips in his favor, and that an injunction is

3  in the public interest.").

4  **B.      Florio's Second Motion for TRO (filed *ex parte*)**

5        Florio's second motion for a TRO also fails.  First, the alleged emergency

6  addressed in the motion (the potential of a detainer action against Florio) has either

7  occurred at this point or it was not an actual emergency needing immediate injunctive

8  relief.  Also, there is nothing substantively different between this motion and Florio's prior

9  motion seeking a TRO.  Specifically, she still does not meet her requirements to obtain a

10  TRO as set forth in *Winter*.  *Id*.  Principally, she has not demonstrated a likelihood of

11  success on the merits, as the Court will address when it discusses the motions to

12  dismiss.

13        Even though Florio filed this motion *ex parte* (without meeting the requirements

14  for filing an *ex parte* motion (*see* Local Rule of Practice 7-5 (freely available on the

15  District Court's website)), she appears to have at least attempted service on the various

16  Defendants.  (Dkt. no. 24, Ex. 3, Certificate of Service.)  Thus, the Court also denies this

17  motion for failure to abide by the Local Rules regarding *ex parte*  motions.

18  **C.      Florio's Motion to Set Aside**

19        First, the Court grants Florio's request to extend time (dkt. no. 35) to file a reply to

20  this motion.  In essence, the Court simply acknowledges that it has considered Florio's

21  late-filed reply to this motion.

22        Florio's motion to set aside argues that Defendants violated the TRO that the

23  Honorable Kent J. Dawson entered in this case on December 15, 2011.  The principal

24  problem with this argument is that Judge Dawson did not issue a TRO on December 15,

25  2011 , or at any time thereafter.  Rather, on December 15, 2011, Judge Dawson simply

26  issued a minute order setting forth a briefing schedule for Florio's motions for TRO and

27  preliminary injunction.

28  ///

1    Further, Florio argues that the foreclosure sale was unlawful because it was orally

2 postponed more than three times.  Under NRS 107.082, if a foreclosure sale is orally

3 postponed more than three times, the foreclosing parties must issue a new notice

4 pursuant to the procedures of NRS 107.080.  Here, Florio claims that the sale date was

5 first scheduled for September 9, 2011, that it was postponed until October 28, 2011 (first

6 postponement), that it was later postponed again until November 29, 2011 (second

7 postponement), and then finally postponed until December 19, 2011 (third

8 postponement), at which time it was sold.  While four different dates were involved, the

9 sale was only postponed three times, not more than three times.  Thus, the December

10 19, 2011, sale without an additional written notice pursuant to NRS 107.080 did not

11 violate NRS 107.082 by Florio's own (inadvertent) concession.  Accordingly, Florio's

12 motion to set aside is denied.

13    Moreover, large portions of the motion do not make sense or, at least, do not

14 make sense in the context of the motion.  For example, the final seven pages of the

15 motion are merely seven pages from a law review article[1] and there is no formal end to

16 the motion.  Rather, the page after the law review article is simply the beginning of

17 Florio's exhibits to the motion.  For all of these reasons, the Court denies the motion.

18    **D.    Motions to Dismiss**

19         **1.    Standard**

20    Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of

21 action that fails to state a claim upon which relief can be granted.  *See North Star Int'l. v.*

22 *Arizona Corp. Comm'n*., 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion

23 to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only

24 when the complaint does not give the defendant fair notice of a legally cognizable claim

25 and the grounds on which it rests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

26

27         [1] The Court notes that the topic of the law review article is pertinent to the subject matter
of this lawsuit, but it does not make sense in the context of this motion to set aside the
28 foreclosure sale as Florio's argument is that Defendants violated a non-existent TRO.

4

1   (2007).  In considering whether the complaint is sufficient to state a claim, the Court will

2   take all material allegations as true and construe them in the light most favorable to the

3   plaintiff.  *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

4       The Court, however, is not required to accept as true allegations that are merely

5   conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell*

6   *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a

7   cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts

8   showing that a violation is *plausible*, not just possible.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

9   1949 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

10      A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure

11  41(b) for failure to comply with Federal Rule of Civil Procedure 8(a).  *Hearns v. San*

12  *Bernardino Police Dept.*, 530 F.3d 1124, 1129 (9th Cir. 2008).  Rule 8(a)(2) requires that

13  a plaintiff's complaint contain "a short and plain statement of the claim showing that the

14  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Prolix, confusing complaints"

15  should be dismissed because "they impose unfair burdens on litigants and judges."

16  *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir.1996).  Mindful of the fact that the

17  Supreme Court has "instructed the federal courts to liberally construe the 'inartful

18  pleading' of pro se litigants," *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), the

19  Court will view Plaintiff's pleadings with the appropriate degree of leniency.

20      "Generally, a district court may not consider any material beyond the pleadings in

21  ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as

22  part of the complaint may be considered on a motion to dismiss.  *Hal Roach Studios, Inc.*

23  *v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).

24  Similarly, "documents whose contents are alleged in a complaint and whose authenticity

25  no party questions, but which are not physically attached to the pleading, may be

26  considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion

27  to dismiss into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454

28  (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of

1    "matters of public record." *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir.

2    1986).  Otherwise, if the district court considers materials outside of the pleadings, the

3    motion to dismiss is converted into a motion for summary judgment.  *See Arpin v. Santa*

4    *Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).  Further, the Court may

5    disregard allegations that are contradicted by the facts established by reference to

6    documents attached as exhibits to the complaint.  *See Durning v. First Boston Corp.*

7    815 F.2d 1265, 1267 (9th Cir. 1987) ("If a complaint is accompanied by attached

8    documents, the court is not limited by the allegations contained in the complaint.").

9    Here, the Court takes judicial notice of certain of the parties' exhibits recorded with Clark

10   County Recorder's office and available to the public.

11               **2.     Analysis**

12              The Court will address the various motions to dismiss collectively because the

13   Court grants each of them and separating them would be of little organizational use.

14   Also, the Court notes that Florio's motion for mediation (dkt. no.52) does not really seem

15   to be a motion.  It makes no request of the court and does not include points and

16   authorities.  Defendants question whether it was not intended as a response to one of

17   the motions to dismiss.  Regardless of its intent, the Court denies the motion as it makes

18   no request and provides no points and authorities.  Further, the Court notes that while

19   some of Florio's filings were a day late, the Court has examined them regardless.

20   However, her responses to the various motions to dismiss are exceedingly subpar even

21   by the standards of a *pro se* litigant. Multiple times Florio simply states that she

22   disagrees with some specified paragraph in the Defendants' motions.  However, the

23   specifications make no sense.  For example, Florio states, "Plaintiff denies paragraph A."

24   However, in the relevant motion there may be two, three, or more subsections entitled

25   "A", but no paragraph entitled "A".  Even assuming that Florio meant a subsection, which

26   the Court does, the Court cannot determine which of the various subsections Florio

27   intends to address (even though simply saying "I disagree" is insufficient anyway).

28   Further, most of her responses are simply recitations of allegations and not legal

1   argument (and very rarely does she address any particular argument made by any

2   Defendant).   When Florio cites law, it is frequently inapplicable (though the Court

3   understands how a *pro se* litigant may not understand why certain statutes are not

4   applicable).[2]   Florio also repeatedly refers to investment tax shelters that are entirely

5   irrelevant to the issues of this case.   In sum, while the Court will address her claims

6   below, Florio's complaint and responses are largely unintelligible and fail to put the

7   Defendants on notice of the particular claims against them per Rule 8 of the Federal

8   Rules of Civil Procedure.

9                           a.      **TILA (1) and RESPA (2)**

10          Florio's TILA and RESPA claims fail because the statutes of limitations have

11   passed.   Both TILA and RESPA have one year statutes of limitations.   15 U.S.C. §

12   1640(e) (TILA); 12 U.S.C. § 2614 (RESPA).   The statute of limitations for these claims

13   runs from the closing of the loan.   *Vega v. JP Morgan Chase Bank, N.A.*, 654 F.Supp.2d

14   1104, 1113-14 (E.D. Cal. 2009).   "The failure to make the required disclosure occurred,

15   if at all, at the time the loan documents were signed.   [Plaintiffs are] in full possession of

16   all information relevant to the discovery of a TILA violation and a § 1640(a) damages

17   claim on the day the loan papers were signed."   *Id.*  (also describing the one year statute

18   of limitations applicable to a RESPA claim).

19          Here, the loan documentation was signed in 2006 and Florio did not bring her

20   claims until 2011.   Thus, the Court must dismiss Florio's TILA and RESPA claims.

21   Further, Florio does not even dispute or argue the statute of limitations in her various

22   responses to the different motions and, thus, the Court also dismisses these claims for

23   Florio's failure to respond.   *See* Local Rule 7-2.

24   ///

25   ///

26

---

27          [2] For example, Florio repeatedly cites NRS § 107.077 to support her legal conclusions.
     However, this statute applies to deeds of trust only after the underlying debt has been repaid.
28   Florio never alleges that she repaid her debt and even admits to having failed to make her
     mortgage payments.  Thus, it is inapplicable to the situation here.

1

### b.     FDCPA (3)

2      The various Defendants are not "debt collectors" under the FDCPA, and thus,

3  Florio cannot sustain a claim against them under this act.  To establish liability under the

4  FDCPA, 15 U.S.C. §§ 1692 *et seq*., "a plaintiff must show that the defendant's actions or

5  status rendered it a 'debt collector' for the purposes of the Act."  *Fleeger v. Bell*, 95

6  F.Supp.2d 1126, 1130 (D. Nev. 2000).  The FDCPA defines a "debt collector" as "any

7  person . . . who regularly attempts to collect . . . debts owed or due or asserted to be

8  owed or due another."  15 U.S.C. § 1692a(6).  Thus, the FDCPA generally only protects

9  consumers against "entities that collect debts for third parties."  *Fleeger*, 95 F.Supp.2d at

10  1130.

11      No allegation points to any of the Defendants being a third-party debt collector,

12  but rather assignees collecting a debt on their own behalf.  Thus, the FDCPA does not

13  apply and the Court dismisses the claim.[3]

14      Finally, and determinatively, Florio also fails to dispute the various Defendants'

15  arguments regarding the FDCPA and has thus failed to respond as required by the

16  Court's Local Rules.  *See* Local Rule 7-2.

17

### c.     Lack of Standing to Foreclose (4) and Quiet Title (15)

18      Florio's claims here are essentially claims for wrongful foreclosure.   Under

19  Nevada law, "[a]n action for the tort of wrongful foreclosure will lie if the trustor or

20  mortgagor can establish that at the time the power of sale was exercised or the

21  foreclosure occurred, no breach of condition or failure of performance existed on the

22  mortgagor's or trustor's part which would have authorized the foreclosure or exercise of

23  the power of sale." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev.

24  1983).  In order to state a claim for wrongful foreclosure, Florio must allege that she has

25
_____

26      [3] Further, most Courts have held that the FDCPA does not apply to non-judicial foreclosure proceedings, s*ee, e.g., Hulse v. Ocwen Fed. Bank FSB,* 195 F.Supp.2d 1188

27  (D.Or.2002), though not all courts agree, *see. e.g.*, *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006).  It appears, however, that the district courts of Nevada are in

28  general agreement that the FDCPA does not apply to non-judicial foreclosure.  *See, e.g.*, *Erickson v. PNC Mortg.*, 2011 WL 1626582 (D. Nev. 2011).

not breached any condition of the loan that would have authorized the foreclosure or exercise of the power of sale.  Florio not only failed to do this but admits in her complaint that she has defaulted on her loan.  Thus, she is not entitled to quiet title or claim wrongful foreclosure.  Thus, the Court dismisses these claims.

Further, in Nevada, an action to quiet title to real property is an equitable proceeding in which a party seeks to settle a dispute over ownership of property or to remove a cloud upon the title to the property, and is permitted pursuant to NRS § 40.010.  *See MacDonald v. Krause*, 362 P.2d 724, 727 (Nev. 1961).  Such an action requests a judicial determination of all adverse claims to disputed property.  *Del Webb Conservation Holding Corp. v. Tolman*, 44 F.Supp.2d 1105, 1110 (D. Nev. 1999) (citing *Clay v. Scheeline Banking & Trust Co.,* 159 P. 1081, 1082-83 (Nev. 1916)).  Here, Florio does not dispute that she has defaulted on her loan, nor does she present a valid claim that the recorded notices of default and sale were invalid. For this additional reason, Florio's claim for quiet title fails.

Finally, as with most of her other claims, Florio failed to adequately respond to the Defendants' various arguments as to these claims.  At most, Florio simply repeats some alleged facts as to recording irregularities which are disproven by her own submitted documents (and separately by the documents of which the Court takes judicial notice).  Any legal argument is essentially nonsensical or irrelevant and not clearly directed against any particular claims but rather just complaints generally as to the unfairness of her situation.  Thus, the Court also dismisses these claims under Local Rule 7-2.

### d.      Fraud Claims (5, 6, and 8)

Fraud and intentional misrepresentation claims must meet a heightened pleading standard under Rule 9, which requires a party to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Pleading fraud with particularity requires "an account of the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *see also Morris v. Bank of Nev.*, 886 P.2d 454, 456

1  n.1 (Nev. 1994).  Florio has not met this heightened pleading standard, and thus, the

2  Court dismisses her fraud claims.

3       In addition to the heightened pleading standard set forth in Rule 9(b), "Rule 9(b)

4  does not allow a complaint to merely lump multiple defendants together but requires

5  plaintiffs to differentiate their allegations when suing more than one defendant . . . and

6  inform each defendant separately of the allegations surrounding his alleged participation

7  in the fraud."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal

8  quotations and modifications omitted).  "In the context of a fraud suit involving multiple

9  defendants, a plaintiff must, at a minimum, identify the role of each defendant in the

10  alleged fraudulent scheme."  *Id.* (internal quotations and modifications omitted).

11       Florio has done none of this.  Florio fails to allege any particularized facts as

12  required by Rule 9(b) and simply tries to lump all of the Defendants together to create

13  the veneer of liability.  This is far from meeting the requirements for pleading fraudulent

14  conduct.  Thus, the Court dismisses these claims for this additional reason.

15       **e.**    **Breach of the Covenant of Good Faith and Fair Dealing (7)**

16       To state a claim for contractual breach of the covenant of good faith and fair

17  dealing, Plaintiff must allege: (1) Plaintiff and Defendants were parties to an agreement;

18  (2) Defendants owed a duty of good faith to the Plaintiff; (3) Defendants breached that

19  duty by performing in a manner that was unfaithful to the purpose of the contract; and (4)

20  Plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev.

21  1995). In Nevada, an implied covenant of good faith and fair dealing exists in every

22  contract, *Consolidated Generator–Nevada v. Cummins Engine*, 917 P.2d 1251, 1256

23  (Nev. 1998), and a plaintiff may assert a claim for its breach if the defendant deliberately

24  contravenes the intention and spirit of the agreement, *Morris v. Bank Am. Nev.*, 886 P.2d

25  454 (Nev. 1994).  Florio never states facts showing how any of the Defendants literally

26  complied with the terms of their alleged contracts but contravened their spirit.  Thus, the

27  Court dismisses her claim.

28  ///

1    Florio may also have intended to state a claim for tortious breach of the covenant

2    of good faith and fair dealing.  However, to state a claim for tortious breach, a plaintiff

3    must show a special element of either (1) reliance or (2) fiduciary duty because the

4    defendant was in a superior or entrusted position.  *A.C. Shaw Constr. v. Washoe*

5    *County*, 784 P.2d 9, 10 (Nev. 1989).

6    Florio's claim fails because it is established that lenders owe no fiduciary

7    obligations to borrowers absent exceptional circumstances or a special relationship. *See*

8    *Kwok v. CR Title Co.*, No. 2:09-cv-2298 (D. Nev. June 23, 2010).  Florio did not allege

9    any other exceptional circumstances or special relationship here beyond the standard

10   lender/borrower relationship.  It appears Florio simply argues that Defendants should

11   have put her interests ahead of their own interests and their failure to do so was a

12   breach of the covenant of good faith and fair dealing.  This simply is not so.  Thus, the

13   Court dismisses this claim on these grounds as well.

14

15                    **f.      Robo Signer / Civil Conspiracy (9) and Civil Conspiracy /
                                RICO (12)**

16   In Nevada a civil conspiracy is defined as "a combination of two or more persons

17   who, by some concerted action, intend to accomplish some unlawful objective for the

18   purpose of harming another which results in damage.  *Ungaro v. Desert Palace, Inc.* 732

19   F. Supp. 1522, 1532 (D Nev. 1989) (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d

20   610, 622 n. 3 (Nev. 1983)).  "To state a cause of action for conspiracy, the complaint

21   must allege: 1) the formation and operation of the conspiracy; 2) the wrongful act or acts

22   done pursuant thereto; and 3) the damage resulting from such act or acts." *Id.*  "The

23   *sine qua non* of a conspiratorial agreement is the knowledge on the part of the alleged

24   conspirators of its unlawful objective and their intent to aid in achieving that objective."

25   *Id.* The alleged facts must show either expressly or by reasonable inference that

26   Defendant had knowledge of the object and purpose of the conspiracy, that there was an

27   agreement to injure the Plaintiff, that there was a meeting of the minds on the objective

28   ///

                                                11

1   and course of action, and that as a result one of the defendants committed an act

2   resulting in the injury.  *Id.*

3          Here, Florio has failed to plead any facts establishing any of the elements of these

4   claims and, therefore, the Court dismisses these claims.[4]  Further, Florio fails to respond

5   specifically to the Defendants' arguments regarding these claims.  Therefore, the Court

6   also dismisses these claims for failure to respond.

7                          **g.      Failure to Consider Loan Modification (10)**

8          This is not a legally recognized cause of action as lenders are not required to

9   consider loan modifications outside of specific statutory frameworks such as the Nevada

10  Foreclosure Mediation Program, from which this loan has been exempted.  Florio alleges

11  in her complaint that she repeatedly requested loan modifications and Defendants BSI

12  Financial and HLS ABC 100, LLC repeatedly refused to grant one without sufficient

13  explanation as to why.  Without more, this is insufficient to state any cause of action.

14  Thus, the Court dismisses this claim.  Also, as with most other claims, Florio does not

15  directly dispute the Defendants' arguments regarding this claim.

16                          **h.      Slander on Title (11)**

17         Florio's slander of title claim is apparently based on her allegation that MortgageIT

18  failed to record the deed of trust which prepared the way for forged documents.

19  However, Florio's allegations are contradicted by her own exhibits and publicly recorded

20  documents of which the Court takes judicial notice.  (Dkt. no.1, Compl. Ex. B, Deed of

21  Trust recorded June 9, 2006; dkt. no. 40, Request for Judicial Notice, Exs. C and D,

22  Deed of Trust recorded June 9, 2006).  Thus, the Court also dismisses this claim.

23                          **i.      Negligence (13)**

24         The Court's best guess as to what Florio's negligence claim consists of is as

25  follows: Defendants negligently failed to live up to some standard in their business

26

27         [4] Also, the Court is unaware of any legal cause of action for "robo signer."  What Florio
    appears to allege is that Defendants' employees failed to properly review documents before
28  signing them.  However, without more, this is not a sufficient basis for a cause of action.

dealings with her which allowed them to intentionally defraud her and violate other rights and statutes.  This is not a cognizable negligence claim.  Thus, the Court dismisses it.  Further, Florio did not address this claim in her various responses in any adequate way and the Court dismisses the claim for this separate reason.

### j.   Cancellation of Instruments / Slander of Title (14)

Here, Florio appears to allege that the deed of trust (or the assignment of the deed of trust dated March 24, 2006, prior to her purchase) for the prior owners of the Property was forged.  First, it is unclear what relevance this allegation, even if true, has to Florio and how it would change the apparent fact that Florio defaulted on her loan.  Second, the allegations for this claim are so confusing that they violate the notice pleading standard of Rule 8.  The Court is entirely unsure of what Florio is attempting to state and thus the parties are deprived of adequate notice of Florio's claim.  Thus, the claim is dismissed.

### k.   Declaratory and Injunctive Relief (16)

First, declaratory and injunctive relief are not claims, but remedies.  Second, as none of Florio's claims for which the remedies of declaratory and injunctive relief may be available are valid, the Court dismisses these "claims" as well.

### E.   Florio's Motion for Summary Judgment

The Court need not, and does not, address the merits of Florio's motion for summary judgment because the Court has dismissed each of her claims.  Thus, the Court merely denies Florio's motion for summary judgment as moot.

### F.   Motion for Judgment on the Pleadings

As the Court has granted all of the various moving Defendants' motions to dismiss, and determined that Florio's claims lack merit, the Court also grants Arch Bay Holdings and Quantum Servicing's motion for judgment on the pleadings.  The Court

///

///

///

1  also notes that Florio's response to this motion was due on July 9, 2012, and has not yet

2  been filed.  Thus, the Court separately grants this motion for failure to respond.[5]

3        **G.**     **Remaining Defendant**

4        Finally, there is one remaining Defendant, Asset Acceptance Capital Corp., who

5  has yet to move for dismissal or file a response to the complaint.  As the Court has

6  determined that each and every one of Florio's claims lack merit based on her pleadings

7  and publicly recorded documents, the Court also dismisses Asset Acceptance Capital

8  Corp. from this case.  As no Defendants remain after this dismissal, the Court dismisses

9  this case.

10  **III.**    **CONCLUSION**

11        Accordingly, and for good cause appearing,

12        IT IS HEREBY ORDERED that Florio's Motion for Temporary Restraining Order

13  (dkt. no.3) is DENIED.

14        IT IS FURTHER HEREBY ORDERED that Florio's Motion for Preliminary

15  Injunction (dkt. no.4) is DENIED.

16        IT IS FURTHER HEREBY ORDERED that Florio's Motion to Set Aside (dkt.

17  no.13) is DENIED.

18        IT IS FURTHER HEREBY ORDERED that Florio's Motion for Temporary

19  Restraining Order (dkt. no.24) is DENIED.

20        IT IS FURTHER HEREBY ORDERED that Florio's Motion to Extend Time (dkt.

21  no. 35) is GRANTED.

22        IT IS FURTHER HEREBY ORDERED that Florio's Motion for Summary Judgment

23  (dkt. no. 34) is DENIED.

24        IT IS FURTHER HEREBY ORDERED that Ocwen Loan Servicing's Motion to

25  Dismiss (dkt. no.16) is GRANTED.

26

27        [5] It is not clear why Florio has not timely responded.  Florio apparently has failed to

28  update her mailing address.  (See Mail Returned as Undeliverable, dkt. no. 70.)  Again, Florio's claims lack merits and warrant dismissal.

1    IT IS FURTHER HEREBY ORDERED that BSI Financial, Seaside Trust, and

2  Vista Pac's Motion to Dismiss (dkt. no. 27) is GRANTED.

3    IT IS FURTHER HEREBY ORDERED that MortgageIT's Motion to Dismiss (dkt.

4  no. 39) is GRANTED.

5    IT IS FURTHER HEREBY ORDERED that Green Tree Servicing's Motion to

6  Dismiss (dkt. no. 43) is GRANTED.

7    IT IS FURTHER HEREBY ORDERED that Arch Bay Holdings and Quantum

8  Servicing's Motion for Judgment on the Pleadings (dkt. no. 69) is GRANTED.

9    IT IS FURTHER HEREBY ORDERED that Asset Acceptance Capital Corp. is

10  Dismissed.  As no Defendants remain, the Court directs the Clerk of the Court to close

11  this case.

12

13    ENTERED THIS 24th day of July 2012.

14    _____

15    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28